The opinion of the Court was delivered by ■
’WARDLAW,. J.
In Seibels vs. Whatley, 2 Hill Ch. 607, there was no circumstance explanatory of the meaning of the testator in the bequest of “Nance and her increase,” and, in analogy to the ruling in Tidyman vs. Rose, Rich. Eq. Cas. 294, it was held that only the after-born increase of Nance passed to the legatee. In Donald vs. McCord, in the Equity Court of Appeals, Rice Eq. 330, two Chancellors, in opposition to ' a third who dissented, and to the decree of the Circuit Chancellor, who was absent, without special reference to'the cir- . cumstance which had been- supposed to explain the meaning of the testator, held that the case could not be distinguished in principle from Seibels vs. Whatley, and that under the bequest of “ Sary and all her increase” the children of. Sary *493 born before tbe making of tbe will did not pass. In Donald vs. Dendy, 2 McM. 124, involving the same will, 'which' had been construed in Donald vs. McCord, the Court of'Errors, notwithstanding many considerations drawn'from the'will' itself, and from the circumstances which surrounded the testator, which had been urged as indicative of a contrary meaning of increase there intended, adhered to the decision in Seibels vs. Whatley as a general rule, and held the rule applicable to that case. After this current of decisions, an exception to the rule could be made only by very strong circumstances. Whether in a case where a female slave, contained in a bequest, was plainly beyond the age of childbearing, and nothing else explanatory of the testator’s meaning appeared, the addition of the words, “ and her increase,” would carry her children previously born, and, if her children, her grandchildren also, it is not necessary now to decide; for, upon examination of the testimony in this case, we find' that, at the time when the will was executed, Margaret had at her breast an infant less than twelve months old, and that Eanny, then not forty years old, had but one child, Allen, and he is named in the bequest'. Mary and Susannah, children of Margaret, are also named. . Opposed to,these circumstances, contradictory of the supposed exception, there is nothing but the expression of the testator’s desire, in the eighth clause of his will, that the residue of his negroes should be sold “by families,” from which it is well argued that it could not have been his intention to separate Margaret and her infant. This humane provision concerning the residue, accompanied by the direct evidence as to the testator’s intention, which was taken de bene esse, may show what he’ would have directed if the case of Margaret and her infant had'been suggested for his decision. But the direct evidence of intention, distinguished from evidence to show the meaning of the words in the will, cannot be admitted: directions concerning the residue affect *494 only by inference tbe question wbat enters into tbe residue; and neither the bard rule of Tidyman vs. Rose, nor tbe general rule as to increase, laid down in tbe cases above cited, can be controlled by an uncertain inference, wbicb is itself counterbalanced by other stronger inferences. So much of tbe circuit decree as relates to tbe increase of Margaret and Fanny must then be reversed.
Wbat is meant by “ all my bank stock of money,” in tbe sixth clause of tbe will? We must put out of view, as inadmissible evidence, tbe conversations between tbe testator and bis neighbor, who drew tbe will, and all tbe other evidence, going to show wbat tbe testator intended to express, and not wbat bis words do express; for here is not a description unambiguous in its application to each of several subjects, nor a description inapplicable with certainty to any subject, but a description inaccurate and capable of various interpretations, but, when interpreted, applicable to only one subject, and to that with tbe certainty wbicb attends tbe interpretation adopted.
Tbe case of Richardson vs. Watson, 4 B. & Adol. 800, and illustrations used in tbe case of Hissocks vs. Hissocks, 5 M. & W. 363, 1 Nev. & Man. 575, sustain tbe admissibility of parol evidence to show what subject was known to a testator by the name or description which be used. (Wig. on Wills, pi. 152.) The evidence in the case before us is, that tbe testator was accustomed to call bis money deposited in the Bank of Newberry bis bank stock, not bis “bank stock of money,” as seems to have been understood by tbe late Chief Justice presiding in tbe Circuit Court. This evidence is, then, of doubtful effect, and, looking only to tbe will and tbe circumstances wbicb serve to put us in tbe situation of tbe testator, we will proceed to tbe interpretation of tbe words used.
Tbe testator was an uneducated planter, little acquainted with legal or commercial terms, and be employed a like per *495 son. to draw his will. He had no bank stock, nor special deposit of coin in any bank, nor store of money which had been drawn from a bank. But he had four or more certificates, expressing that, within a year preceding the execution of his will, he had deposited various sums of money in the Bank of Newberry, and was by agreement entitled to interest thereon at four per cent., or five per cent., after six months; and upon one of these he had received fifty dollars for interest after the expiration of six months from the first deposit. The money, which was thus subject to be drawn at his pleasure, would probably neither by him nor by a person better acquainted with the phraseology of trade have been spoken of as an " outstanding debt.” It was the only money he owned which was in any way connected with a bank, further than this, that he had on hand about seventy-five dollars of money, some or all of which was in current bank bills. Banh money is, however, a very unusual phrase for bank bills, and would of itself be more properly applicable to money in bank, especially when we see that the will intimates no distinction between coin and bills. It is true that the will makes no mention of money on hand, but it contains directions for payment of money much exceeding the sum which was on hand, which directions, if the money in bank and the outstanding debts go to legatees, must in contemplation of the testator have required expenditures from the sales that were directed. “ Bank stock of money” is stronger in its application to money in bank than banh money; for it seems to denote an accumulated store of money distinguished from other money by the circumstance that it is somehow associated with a bank — either in a bank, or drawn from a bank. As my iron safe store of money would carry a sum in the iron safe, so “ bank stock of money,” when there is no other subject to which it is applicable, must carry a sum of money in the bank.
It is, however, said that the testator’s money was not in *496 the bank, but was’.lent to the bank, and disbursed-by the bank.' No money lent is'ever expected to-be returned in kind, yet a bequest of money'lent to'A would certainly-carry an equivalent sum, and the certificates, calling the'testator’s sums of money deposits, and securing to him the right to reclaim them at his pleasure, imply that equivalent sums were always in the bank, subject to his order.- ■■ ■ - ■
Chapman vs. Reynolds, 6 Jur. N. S. 440, is' an authority for maintaining that even stock in the public funds may pass under the words, “all the money I may die’possessed of,” where'there, is no other property upon which the bequest might: operate. The ordinary use of the' word stock, to signify shares in the capital of a bank or other company, does-not appear,-from'the will in the case before us, to have been known to the testator; for he gave his stock in the Plank-road Company by the words, “ my interest in the plank-road.” Our case of McCall vs. McCall, 4 Rich. Eq. 447, sustains the efficacy of evidence concerning the circumstances of the testator and his affairs, to explain the meaning of his words, and apply an imperfect 'description to a subject, where there is no other subject to which it is applicable. •' ■ ' • •
This Court is, then, not only constrained to believe, but feels an assured legal persuasion that the words, “all my bank stock of money,” in John W. Payne’s will, are applicable to the money secured by the certificates above mentioned, and to that only.
The inadvertent omission which is mentioned in the complainants’ second ground of appeal must be supplied.
It is therefore ordered that it be referred to the Commissioner to take a full account of the actings and doings of the executors of John W. Payne, deceased, embracing ■ all sales made by them, and of all matters of account between the said executors and other parties to this suit, and between any two or more of those other parties touching the execu *497 tion of tbe will of tbe said John .W. -Payne; and that tbe Commissioner do, in conformity with this opinion, ascertain the sum due to each party and from whom, and report the same, distinguishing between the various' bequests made to the complainant Lucinda, some absolutely, some for life with power of disposition in the whole, and some for life with power of disposition in part.
Dunkin, C. J., and Inglis, J., concurred.

Decree modified.